1  LINDA CLAXTON, CA Bar No. 125729
   linda.claxton@ogletree.com
2  YEVA MIKAELYAN, CA Bar No. 342107
   yeva.mikaelyan@ogletree.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  400 South Hope Street, Suite 1200
   Los Angeles, CA 90071
5  Telephone: 213-239-9800
   Facsimile: 213-239-9045
6
   Attorneys for Defendants
7  INTERSTATE-RIM MANAGEMENT COMPANY, LLC,
   INTERSTATE HOTELS & RESORTS, INC. and
8  AIMBRIDGE HOSPITALITY, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID YUREVICH JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERSTATE-RIM MANAGEMENT COMPANY, LLC, a Delaware Limited Liability Company operating at: DOUBLETREE SAN PEDRO; INTERSTATE HOTELS & RESORTS, INC.; AIMBRIDGE HOSPITALITY, LLC, a Delaware Limited Liability Company; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:22-cv-03713<br><br>**DEFENDANTS INTERSTATE-RIM MANAGEMENT COMPANY, LLC, INTERSTATE HOTELS & RESORTS, INC. AND AIMBRIDGE HOSPITALITY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>Complaint Filed: February 28, 2022<br>Trial Date: None<br>District Judge: Hon. _____ |

Case No. 2:22-cv-03713

DEFENDANTS' NOTICE OF REMOVAL

51677983_1.docx

# NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants INTERSTATE-RIM MANAGEMENT COMPANY, LLC, INTERSTATE HOTELS & RESORTS, INC. and AIMBRIDGE HOSPITALITY, LLC (collectively, "Defendants"), through their undersigned counsel, hereby remove the above-captioned action from the Superior Court for the County of Los Angeles to the United States District Court for the Central District of California in accord with 28 U.S.C. §§ 1332(d), 1441, and 1446. The grounds for removal are as follows:

## I. BACKGROUND

1. On February 28, 2022, plaintiff David Yurevich Jr. ("Plaintiff"), on behalf of himself and all others similarly situated, filed the lawsuit entitled *David Yurevich Jr. v. Interstate-Rim Management Company, LLC, a Delaware Limited Liability Company operating at: Doubletree San Pedro; Interstate Hotels & Resorts, Inc.; Aimbridge Hospitality, LLC., a Delaware Limited Liability Company ("Defendants"); and DOES 1-50, inclusive*, Case No. 22SRCV07221 in the Superior Court for the County of Los Angeles.

2. Plaintiff served the Complaint on Interstate-Rim Management Company, Aimbridge Hospitality, LLC and Interstate Hotels & Resorts on April 29, 2022. Declaration of Linda Claxton ("Claxton Decl.") ¶ 2, Ex. A. In accordance with 28 U.S.C. § 1446(a), true and correct copies of "all process, pleadings, and orders" served on Defendants in this action are attached to the Claxton Declaration as **Exhibit A**.

3. The Complaint asserts class action claims for: (1) failure to pay wages including overtime as required by Labor Code sections 510 & 1194; (2) failure to pay timely wages required by Labor Code section 203; (3) failure to provide accurate itemized wage statements as required by Labor Code section 226; (4) failure to accurately record and pay sick leave as required by Labor Code section 246; (5) ; failure to indemnify necessary business expenses as required by Labor Code section 2802 and (6) violation of California Labor Code § 204 (wages not timely paid during

employment); (7) violation of Business & Professions Code section 17200, *et seq* ("UCL Claim").

4. As set forth more fully below, based on the allegations of the Complaint and other evidence collected by Defendants, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C § 1332(d). Therefore, this action may be removed to this Court, pursuant to 28 U.S.C. § 1441.

5. In accordance with 28 U.S.C. § 1446(d), Defendants will promptly serve this notice of removal on Plaintiff's counsel and file a copy with the clerk of the Superior Court for the County of Los Angeles.

## II. PROCEDURAL GROUNDS FOR REMOVAL ARE SATISFIED.

6. Removal is timely, as this Notice is filed within thirty (30) days of Defendants being served with the summons and complaint. 28 U.S.C. § 1446(b).

7. Under 28 U.S.C. §§ 84(c) and 1441(a), venue is proper in the United States District Court for the Central District of California because this Court embraces the Superior Court for the County of Los Angeles, where this action was pending.

8. Defendants filed their Answer to Plaintiff's Complaint in Los Angeles County Superior Court on May 27, 2022. A copy of Defendants' Answer filed in the Superior Court is attached to the Claxton Declaration as **Exhibit B**. Defendants are not aware of any further proceedings or filings regarding this action in that court. Defendants need not secure consent from the "Doe" defendants prior to removal. 28 U.S.C. § 1453(b) ("[S]uch action may be removed by any defendant without the consent of all defendants."); *see, e.g.*, *United Comput. Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (explaining that the consent requirement "does not apply to" "unknown" parties).

9. The removing party need only provide a "short and plain statement of the grounds for removal" and need not submit evidence unless and until the opposing party challenges the factual allegations in the notice of removal. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014); *Arias v. Residence Inn by Marriott*, 936

F.3d 920, 922 (9th Cir. 2019) ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." (citation omitted)).

### III. THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which grants federal district courts jurisdiction over putative class actions with more than 100 class members where the aggregate amount in controversy exceeds $5 million and any member of the class of plaintiffs is a citizen of a state different from any defendant. As set forth below, this action satisfies each of the requirements of section 1332(d)(2) for original jurisdiction under CAFA.

11. Support for CAFA jurisdiction in this action is based both on the allegations of the Complaint and Defendants' investigation of its business records.[1] *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) (A defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable.").

#### A. This Is A Covered Class Action.

12. This action meets CAFA's definition of a class action, which is "any civil action filed under Fed. R. Civ. P. 23 or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1435(a) & (b). Plaintiff purports to bring this action on behalf of himself and "all other similarly situated" and identifies a proposed class of "[a]ll persons who have been employed by Defendants as Non-Exempt Employees or equivalent positions, however titled, in the state of California within

---

[1] In making its good faith calculations of the size of the purported class and the amounts-in-controversy being sought by the Complaint, Defendants do not concede or admit, in any fashion, that any claims for such amount, or any amounts, have legal or factual merit, or that the persons on behalf of which such claims are asserted could properly be certified as members of a class under Fed. R. Civ. P. 23, and reserves all rights and defenses to such claims.

four (4) years from the filing of the Complaint in this action until its resolution." Compl. ¶ 10. Plaintiff brings these claims pursuant to California's class action statute, Cal. Civ. Proc. Code § 382, and alleges that "[t]here is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable." Compl. ¶ 14.

### B. The Proposed Class Exceeds 100 Members.

13. Plaintiff seeks to represent "[a]ll persons who have been employed by Defendants as Non-Exempt Employees or equivalent positions, however titled, in the state of California within four (4) years from the filing of the Complaint in this action until its resolution." Compl. ¶ 10.

14. Assuming that the proposed class, as defined by Plaintiff's Complaint, comprises all non-exempt, hourly-paid employees employed by Defendants in California at any time from February 28, 2018 to the present, the proposed class includes at least 3,441 persons. Claxton Decl. ¶ 8. Accordingly, for purposes of removal, the aggregate number of putative class members as defined by the Complaint is greater than 100 persons, as required by 28 U.S.C. § 1332 (d)(5)(B).

### C. The Parties Are Minimally Diverse.

15. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizen of at least one class member is diverse from the citizenship of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

16. For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

#### i. Plaintiff is a Citizen of California

17. For diversity purposes, a person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Marroquin v. Wells Fargo, LLC*, 2011 U.S. Dist.

LEXIS 10510, at *3-4 (S.D. Cal. 2011); *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides *prima facie* case of domicile); *see Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise).

18. The Complaint alleges that Plaintiff is, and at all times relevant to this action was, a resident of California. Compl, ¶ 6. Accordingly, Plaintiff is a citizen, resident and domiciliary of the State of California.

### ii. Defendants Are Not Citizens of California.

19. For diversity purposes, a limited liability company is deemed a citizen of any State of which its owners/members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (applying the standard used by sister circuits and treating LLCs like partnerships). Moreover, as explained by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the phrase principal place of business in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high level officers direct, control and coordinate the corporation's activities, *i.e.*, its nerve center, which will typically be found at its corporate headquarters. *Hertz Corp.*, 559 U.S. at 78.

20. "[A] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Hertz Corp.*, 559 U.S. 77 at 80-81 (explaining what constitutes a corporation's principal place of business).

21. Defendant Aimbridge Hospitality, LLC ("Aimbridge") was, at the time the Complaint was filed, and still is, as of the date of this removal, a limited liability company organized under the laws of Delaware. Declaration of Christine Nilluka

("Nilluka Decl."), ¶ 4.  As a limited liability company, Aimbridge is a citizen of each state in which its members are citizens.

22. Aimbridge's sole member, Aimbridge Parent, Inc. is incorporated in Delaware.  Aimbridge Parent, Inc.'s headquarters and its executive officers and senior management personnel, at all relevant times were and still are, as of the date of this removal, located in Plano, Texas.  *Id*.  Based on the location of the officer positions above, corporate decisions are made either individually, or as a management team, in Plano, Texas.  *Id*.

23. Because Aimbridge Parent, Inc. is incorporated in the State of Delaware, with its principal place of business in Plano, Texas, under 28 U.S.C. § 1332(c)(1), Aimbridge Parent, Inc. is a citizen of Delaware and Texas.  Accordingly, Aimbridge is a citizen of Delaware and Texas.

24. Defendant Interstate RIM-Management Company, LLC ("Interstate RIM") was, at the time the Complaint was filed, and still is, as of the date of this removal, a limited liability company organized under the laws of the State of Delaware.  Nilluka Decl. ¶ 5.  As a limited liability company, Interstate RIM is a citizen of each state in which its members are citizens.

25. Interstate RIM's sole member, Interstate Operation Company, LP is owned by Defendant Interstate Hotels & Resorts, Inc. ("Interstate") as the General Partner and sole Limited Partner.  Interstate is incorporated in Delaware.  Interstate's headquarters and its executive officers and senior management personnel, at all relevant times were and still are, as of the date of this removal, located in Plano, Texas.  Based on the location of the officer positions above, corporate decisions are made either individually, or as a management team, in Plano, Texas.  Interstate's crucial day-to-day operations and administrative functions also are located in Plano, Texas.  *Ibid*.

26. Because Interstate is incorporated in the State of Delaware, with its principal place of business in Plano, Texas, under 28 U.S.C. § 1332(c)(1), Interstate is a citizen of Delaware and Texas.  Accordingly, Interstate RIM is a citizen of Delaware

and Texas.

27.   Minimal diversity is established because Plaintiff is a citizen of California and Defendants are not; Defendants are citizens of Delaware and Texas. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

### D.   The Aggregate Amount In Controversy Exceeds $5 Million.

28.   Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*, 574 U.S. at 89. To determine the amount in controversy, the Court must assume that the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims. *See Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") (emphasis and internal quotation marks omitted).

29.   Plaintiff does not specifically plead the amount of damages claimed. Where this is the case, a defendant need only make a *prima facie* showing that it is more likely than not that the amount in controversy exceeds $5 million. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis omitted). A "removing defendant is not obligated to

'research, state, and prove plaintiff's claims for damages.'" *Id.* at 1204-05 (emphasis omitted). Defendant may rely on "reasonable assumptions" in calculating the amount in controversy for removal purposes. *Arias*, 936 F.3d at 922. Furthermore, in cases where statutory penalties are sought, as is the case here, "district courts…of California have looked to the statutory maximum…in determining whether the jurisdictional requirements of CAFA have been met." *Korn,* 536 F. Supp. 2d at 1205.

30. "[I]n wage-and-hour cases, the amount in controversy turns on the frequency of the alleged violations of California labor laws." *Hayes v. Salt & Straw, LLC*, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020). If the complaint is ambiguous, as here, defendants are entitled to make reasonable assumptions concerning the number of violations. *See, e.g.*, *Arias*, 936 F.3d at 922. An assumed violation rate of one violation per week is frequently considered reasonable where the plaintiff alleges a pattern and practice of conduct. *E.g.*, *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (noting that "other courts within the Ninth Circuit have accepted a rate of one violation per work week as an acceptable basis for calculating the amount in controversy" and accepting same); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *7 (C.D. Cal. May 9, 2018) (same); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where. . . the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws. . . such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week."); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) ("Given the allegations. . . that the violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff.").

31. Based on Plaintiff's allegations in the Complaint, evidence collected by Defendants, and Defendants' reasonable assumptions concerning violations derived from the allegations in the Complaint, the aggregate amount in controversy from the

1  putative class allegations satisfies the jurisdictional threshold. *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (finding in wage and hour class action that defendant established amount in controversy by a preponderance of the evidence where defendant's calculations "were relatively conservative, made in good faith, and based on evidence wherever possible"). The Complaint seeks unpaid wages including overtime wages, interest on wages, civil and statutory penalties, restitution, liquidated damages, reasonable attorneys' fees, and costs of suit on six causes of action brought under a multitude of different labor statutes for each member of the proposed class. *See* Compl. at pp.16-17 ("Prayer for Relief").

32. Conservatively, Defendants estimate that Plaintiff's Complaint places at least the following amounts in controversy:

- Unpaid wages including overtime (first cause of action): $3,412,511
- Final wages not timely paid (second cause of action): $5,082,643.20
- Non-compliant wage statements (third cause of action): $2,147,000
- Necessary business expenses not indemnified (fifth cause of action): $1,072,700
- **Total Estimated amount in controversy:** $11,714,854.20

   1. Plaintiff's First Cause of Action for Failure to Pay Wages Including Overtime Places At Least $6,825,021 In Controversy.

33. Plaintiff's First Cause of Action seeks unpaid overtime wages for time allegedly worked but not compensated. Compl. ¶¶ 40-51. Specifically, Plaintiff alleges that he and the proposed class members "consistently worked in excess of (8) hours in a day and/or forty hours in a week and Defendants failed to accurately calculate overtime pay" and that he and the proposed class members "consistently worked of-the-clock, for duties performed while clocked-out" including "[using] their personal cell phone to communicate with the manager," "[closing] the gate after clocking out on a daily basis," and "cleaning the fingerprint scanner so they could accurately clock-in" that did not qualify for overtime pay. Compl. ¶¶ 32, 46-47.

Plaintiff further alleges that Defendants "failed to incorporate bonuses, shift differentials, and other remuneration into the employees' regular rates of pay for purposes of calculating overtime." Compl. ¶ 48.

34.  As a result, Plaintiff alleges that he and the proposed class members are entitled to "unpaid wages and overtime compensation, as well as interest, costs, and attorneys' fees." Compl. ¶ 51.

35.  The statute of limitations for a claim seeking unpaid overtime wages is three years. Cal. Civ. Proc. Code § 338. This is extended to four years due to Plaintiff's UCL claim. *See Sullivan,* 51 Cal. 4th at 1206; *Maravilla v. Rosas Bros. Constr., Inc.,* 401 F. Supp. 3d 886, 901 (N.D. Cal. 2019) (allowing plaintiff to recover an additional year's worth of unpaid wages not otherwise recoverable under Cal. Lab. Code § 1194 based on UCL claims).

36.  The Complaint does not allege the number of violations that occurred between February 28, 2017 to the present, or the amount of unpaid wages allegedly owed to Plaintiff or the proposed class members. Rather, Plaintiff alleges that "[a]t all times relevant, Defendants have failed to accurately pay overtime owed to Plaintiff and Class Members." Compl. ¶ 49. Due to Plaintiff's allegation of a pattern and practice of failing to compensate employees for all time worked, Defendants may reasonably base their amount in controversy calculations on an estimate that each class member was not compensated for one hour of overtime wages per week. *See, e.g., Soto v. Tech Packaging, Inc.,* 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging, LLC,* 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Francisco v. Emeritus Corp.,* 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime

violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable."); *Feao v. UFP Riverside, LLC,* 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (approving of defendant's "measured" assumption that "each class member worked only one unpaid hour of overtime and missed only one hour of minimum wage work per work week"); *Ray v. Wells Fargo Bank, N.A.,* 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's "reasonable and conservative" assumption that each class member was entitled to one hour of overtime per week).

37. Based on a review of their business records, Defendants are able to estimate the number of weeks that each individual employee worked during the class period, determine each potential class member's hourly rate of pay, and estimate each employees overtime rate (1.5 times the hourly rate of pay, exclusive of non-discretionary bonuses, incentive pay, etc.). Claxton Decl. ¶ 11. Assuming Plaintiff and the class members are owed one additional hour of overtime compensation per week, Defendants can estimate the unpaid overtime wages allegedly owed to each individual employee.[2]

38. From its employment records, Defendants are able to make this calculation for each of the 3,441 potential class members in order to estimate each individual employee's allegedly unpaid overtime wage. Aggregated together, the total of these allegedly unpaid wages works out to $3,412,551. Claxton Decl. ¶ 8.

39. Further, based on the allegations of the Complaint, this is a conservative estimate of Defendants' potential liability for unpaid overtime wages. The actual amount in controversy is likely higher because Plaintiff alleges that the correct

---

[2] Unpaid overtime wages owed: (work weeks for individual employee) x (one unpaid overtime hour per week) x (1.5 x (standard rate of pay for individual employee)) = unpaid overtime wages owed to individual employee. Once this calculation is complete for each potential class member, the individual calculations can be aggregated to determine the total unpaid overtime wages in controversy.

"regular rate of pay" for overtime pay is not the employee's standard hourly rate of pay, but the "regular rat of pay," which Plaintiff defines elsewhere as inclusive of "bonuses, incentives, commissions, training and orientation pay, shift differential pay, and other compensation for overtime calculation purposes." *See* Compl. ¶¶ 29, 30, 48. If Plaintiff is correct, then using 1.5 times the employee's standard hourly pay undervalues the total amount of allegedly unpaid overtime wages owed.

40. Plaintiff seeks liquidated damages on his unpaid wages claim, which entitles an aggrieved employee to recover damages "in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2; Compl. p. 16 (Prayer for Relief). Liquidated damages may be recovered *in addition* to any allegedly unpaid wages. *Koreisz v. On Q Fin., Inc.,* 2018 WL 6567694, at *5 (C.D. Cal. Dec. 12, 2018) ("Section 1194.2 allows an employee to recover, in addition to any unpaid wages, a penalty equal to the amount of unpaid wages in an action under section 1194."). For purposes of calculating liquidated damages, Courts have allowed defendants to double the total amount owed on the unpaid wages claim. *See, e.g., Lucas,* 2018 WL 2146403, at *6 (agreeing with defendant that, "because Plaintiff seeks liquidated damages on her minimum wage claim [citation], the total amount of this claim should be doubled"); *Hernandez v. Nuco2 Mgmt., LLC,* 2018 WL 933506, at *3 (E.D. Cal. Feb. 16, 2018) (finding that "[t]he liquidated damages calculations yield the same amounts" as the unpaid minimum wages calculations). Therefore, Plaintiff's claim for liquidated damages places an additional $3,412,511 in controversy.

41. Collectively, Plaintiff's First Cause of Action for unpaid wages places *at least* $6,825,021 in controversy.

2. Plaintiff's Second Cause of Action For Final Wages Not Timely Paid Places Approximately $5,082,643.20 In Controversy.

42. Plaintiff's Second Cause of Action seeks penalties under California Labor Code § 203 for failure to timely pay wages due at termination. Compl. ¶¶ 52-

56. Specifically, Plaintiff alleges that Defendants "willfully failed and refused, and continue to willfully fail and refuse, to pay Plaintiff and Class Members their wages, earned and unpaid, either at the time of discharge, or within seventy two (72) hours of their voluntarily leaving Defendants' employ." Compl. ¶ 55. Plaintiff's Complaint alleges that these wages owed include "regular and overtime." *Id*.

43. As a result, Plaintiff alleges that he and the proposed class members are entitled to recover penalties pursuant to California Labor Code § 203. Compl. ¶ 56. An employer that willfully fails to pay all wages due at termination within the required time is subject to a penalty whereby the employee's wages continue to accrue for up to 30 days from the due date until back wages are paid or an action is commenced. Cal. Lab. Code § 203.

44. The applicable statute of limitations for a claim seeking Labor Code section 203 penalties is three years (from February 28, 2019 to the present). Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338.

45. The Complaint does not allege the number of violations that occurred between February 28, 2019 and the present. Instead, Plaintiff relies on his other allegations to support his claim that he and the proposed class members did not receive all wages owed to them upon termination. See Compl. ¶¶ 52-56. If Plaintiff's other claims are found to be true, all class members terminated more than thirty (30) days ago are entitled to 30 days' waiting period wages under Labor Code section 203.

46. Plaintiff also claims that he and the proposed class members "frequently worked well over eight (8) hours in a day and forty (40) hours in a work week," suggesting that most potential class members were full time employees. See Compl. ¶ 26, 28. Therefore, it is reasonable to assume that potential class members are each owed 240 hours of additional compensation at their hourly rate of pay – the equivalent of 30 days' of full time work. See *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *8 (finding "reasonable" defendant's assumption that putative class members did not receive final wages for the full 30-day period under which penalties may accrue.");

1  Long v. Destination Maternity Corp., 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) (finding that Defendant's assumption that final wages went unpaid for the full thirty days is reasonable where plaintiff alleges that defendant failed to pay final wages and still had not paid plaintiff all wages).

47. Of the putative class, approximately 1,354 full-time employees were no longer employed with Interstate-RIM within three years since the filing of the complaint on February 28, 2019. These individuals' average daily rate of pay was $96.28. Of the Putative class, approximately 694 part-time employees were no longer employed with Interstate-RIM within three years since the filing of the complaint on February 28, 2019. These individuals' average daily rate of pay was $56.28. Claxton Decl. ¶ 9. Using this data, Defendants can determine the amount of waiting time penalties owed to each individual employee under Labor Code section 203. The amount in controversy totals $3,910,893.60 for full-time employees (conservatively estimating 6 hours of work per day, $96.28 average daily rate x 30 x 1,354 full-time class members) and $1,171,749.60 for part-time employees (4 hours of work per day, $56.28 average daily rate x 30 x 694 part-time employees).

48. Thus, Plaintiff's Second Cause of Action places approximately $5,082,643.20 in controversy, again, fully satisfying the amount in controversy..

> 3. <u>Plaintiff's Third Cause of Action For Non-Compliant Wage Statements Places Approximately $2,147,000 In Controversy.</u>

49. Plaintiff's Third Cause of Action seeks penalties under California Labor Code section 226(a) for failure to furnish complete and accurate wage statements. Compl. ¶¶ 57-65. Specifically, Plaintiff alleges that Defendants "have failed to accurately record all time worked" and have "failed to accurately record the meal and rest premiums owed and all wages owed per pay period" in violation of Labor Code section 226(a). Compl. ¶ 61-62.

50. As a result, Plaintiff alleges that he and the proposed class members are entitled to recover statutory and civil penalties under Labor Code section 226 and

226.3 and interest for wages untimely paid. Compl. ¶¶ 64-65; p. 16-17 (Prayer for Relief). The applicable penalty for Labor Code section 226 is $50 for the initial pay period in which a violation occurs and $100 for each subsequent violation, up to a maximum aggregate penalty of $4,000. Cal. Lab. Code § 226(e). The applicable penalty for Labor Code section 226.3 is $250 for the initial pay period in which a violation occurs and $1,000 for each subsequent violation. Cal. Lab. Code § 226.3.

51. The applicable statute of limitations for a claim seeking Labor Code section 226(e) penalties is one year (from February 28, 2021 to the present). Cal. Civ. Proc. Code § 340(a).

52. The Complaint does not allege the number of violations that occurred between February 28, 2021 and the present. Plaintiff alleges that the wage statement deficiencies include, but are not limited to Defendants' "[failure to] to record all or some of the items delineated in Industrial Wage Orders and Labor Code § 226." See Compl. ¶ 60. If Plaintiff's allegations are true, then all wage statements issued from February 28, 2021 to the present were deficient. *Koreisz*, 2018 WL 6567694, at *6 (finding "reasonable" defendant's assumption that "all wage statements would not accurately reflect Plaintiff and the class members' compensation" based on broad allegations); *Korn*, 536 F. Supp. 2d at 1205 (court may assume maximum statutory penalty for the purpose of calculating amount in controversy).

53. There were a total of 22,121 wage statements issued from 1 year before the date of complaint filing to February 28, 2022. Assuming that all wage statements were deficient, the amount in controversy is $2,147,000.[3]

54. Thus, Plaintiff's Fifth Cause of Action places at least $2,147,000 in controversy.

---

[3] *See, e.g., Lucas*, 2018 WL 2146403, at *8 (calculating penalties under section 226(e))

        4.     <u>Plaintiff's Fifth Cause of Action For Unreimbursed Business Expenses Places Approximately $1,072,700 In Controversy.</u>

55. Plaintiff alleges that, in violation of Cal. Lab. Code § 2802, Plaintiff and class members "were not adequately reimbursed by Defendants" for "expenses incurred as a result of their personal cellphone usage and personal funds usage." Compl. ¶ 72. Plaintiff asserts that Plaintiff and proposed class members are "entitled to the recovery of such amounts, plus interest and penalties thereon, attorneys fees' and costs." Compl. ¶ 73. Assuming each one of the 3,441 proposed class members, conservatively, is owed $20 per month in business-related expenses, the proposed class is entitled to recover at least the following: $1,072,700 (3,441 proposed class members x $20 x 156 weeks) – the alleged amount in controversy for Plaintiff's class claim under the fifth cause of action.

56. As it stands, the total amount in controversy as calculated above is *at least* $11,714,854.20.

        5.     <u>Summary</u>

57. Based on Plaintiff's allegations, the amount in controversy is at least $11,714,854.20 ($3,412,511 + $5,082,643.20 + $2,147,000 + $1,072,700).

    **E.**    **No Exception Applies to Defeat CAFA Jurisdiction.**

58. Neither CAFA's "local controversy" nor its "home state" exceptions apply to this case. For the home state exception to apply, all primary defendants must be citizens of the state in which the case is filed. 28 U.S.C. § 1332(d)(B); *see also Corsino v. Perkins*, 2010 WL 317418, at *5 (C.D. Cal. Jan. 19, 2010). Similarly, for the local controversy exception to apply, at least one defendant must be a citizen of California, and that defendant's conduct must form a significant basis for the claims asserted by the proposed plaintiff class. 28 U.S.C. § 1332(d)(4)(i)(II). Defendants are not citizens of California, so neither exception applies.

**IV.    RESERVATIONS OF RIGHTS.**

59. By removing this matter, Defendants do not waive and, to the contrary,

reserve any rights they may have, including, without limitation, all available arguments and affirmative defenses. Defendants do not concede that class certification is appropriate or that Plaintiff is entitled to any recovery whatsoever. Should the Court or opposing counsel request additional information, evidence, and/or calculations to demonstrate that this Action places at least $5 million in controversy, Defendants reserve the right to refine the methodologies used here and calculate the amount in controversy with greater precision, which may significantly increase the result. In the event that Plaintiff files a request to remand, or the Court considers remand *sua sponte*, Defendants respectfully request the opportunity to submit additional argument and/or evidence in support of removal.

## V. CONCLUSION

60. WHEREFORE, Defendants respectfully request that their Notice of Removal be deemed good and sufficient and for this Court to exercise subject matter jurisdiction over this removed action.

DATED: May 31, 2022

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Linda Claxton
Linda Claxton
Yeva Mikaelyan

Attorneys for Defendants
INTERSTATE-RIM MANAGEMENT COMPANY, LLC, INTERSTATE HOTELS & RESORTS, INC. and AIMBRIDGE HOSPITALITY, LLC